UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

           -v.-                                       ORDER

TROY YOUNG,                                17-CR-364-21 (CS)

                  Defendant.
--------------------------------------------------------x

Seibel, J.

       Before the Court is Defendant Troy Young's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release," (Doc. 577), and the Government's opposition thereto, (Doc. 586).

       Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission.  Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not be a danger to the safety of any other person or the community.  Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons: 1) the defendant has a terminal medical condition or because of serious health condition from which he is not expected to recover is substantially diminished in his ability to provide self-care; 2) the defendant is at least 65 years old, has served 75% or 10 years of his sentence, and is experiencing a serious deterioration in health because of the aging process; 3) family circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above.  But "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *United States v. Brooker*,

976 F.3d 228, 237 (2d Cir. 2020). "The defendant has the burden to show he is entitled to a sentence reduction" under Section 3582(c)(1)(A). *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

On November 14, 2019, Defendant Young was sentenced principally to 180 months' imprisonment on his convictions for racketeering conspiracy and causing death through the use of a firearm during the commission of murder in aid of racketeering. (Doc. 483.) This sentence was substantially below Defendant's Sentencing Guidelines range of 360 months to life. (Doc. 484 ¶ 83.) The parties had agreed to recommend 180 months, and the Court went along with the recommendation, in recognition of the fact that during the shootout that resulted in his firearms/murder conviction, Defendant was himself shot, resulting in his being paralyzed from the chest down and suffering other complications, such as an inability to regulate his body temperature. By the Court's calculation, Defendant has served approximately 24 months.

A sentence reduction may be considered only if Defendant has exhausted his administrative remedies, meaning he must have applied to the Warden of his facility and waited at least thirty days for a response. *See* 18 U.S.C. § 3582(c)(1)(A). Defendant claims, with no documentary support, that he requested a sentence reduction from the Warden at the Metropolitan Detention Center in Brooklyn ("MDC") approximately four to six months before making the instant motion. The Government represents that MDC records reveal no such request. In the absence of reliable evidence of exhaustion, I am without authority to grant a sentence reduction. *See United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Roberts*, No. 18-CR-528, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020).

Even if I had the authority to reduce Defendant's sentence, I would not.

Defendant states that he tested positive for COVID-19 on January 15, 2021, and has been experiencing fatigue, shortness of breath and body aches. He notes that "[s]ince high fevers are a known COVID symptom, and since [he] cannot regulate his body temperature, he remains at a severely heightened risk for dire consequences." (Doc. 577 at 8.) He observes that MDC has failed to prevent a COVID outbreak and that social distancing and other preventative measures are impossible in prison. He reiterates that he is paralyzed, cannot regulate his temperature, requires the use of a catheter and a daily enema to relieve himself, and is susceptible to bed sores and infection. He further states that has suffered a burn in a hot shower, bed sores and swelling while at the MDC.

The Court in no way minimizes the suffering that Defendant's paralysis and its accompanying conditions can and do cause. But it was aware of those factors when it imposed sentence, and in recognition of them imposed a drastically reduced sentence. They do not warrant a different result fifteen months later.

Defendant's COVID diagnosis is a new fact, but happily there is no indication that Defendant suffered a severe case. He concedes that his temperature is being monitored, (Doc. 577 at 8), does not claim to be suffering from fever, and does not suggest that he is in need of additional treatment or what it might be.[1] Now that he has been diagnosed with the disease and seems to be weathering it,[2] a sentence reduction based on the risk of contracting it no longer

---

[1] Defendant's medical records show that acetaminophen has been ordered for his headaches, and he does not suggest that this is insufficient or inappropriate. Indeed, unless hospitalized, COVID-19 patients in the community also generally wait out the disease with over-the-counter medications.

[2] Defendant's January 15 test result came from a January 13 swab. It is now almost a month later and the Court has not heard anything suggesting Defendant has or had a severe case.

makes sense.  "This Court and others have declined to find 'extraordinary and compelling circumstances' in cases where a defendant has a prior COVID-19 diagnosis."  *United States v. Williams*, No. 11-CR-172, 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020); *see United States v. Mateus*, No. 14-CR-504, 2020 WL 5096062, at *4 (S.D.N.Y. Aug. 28, 2020) ("Put simply, Mr. Mateus has already contracted the COVID-19 virus and recovered from it. Other courts have denied compassionate release requests on this basis, and the Court is persuaded by their analyses."); *United States v. Rodriguez*, No. 19-CR-64, 2020 WL 4581741, at *2 (D. Conn. Aug. 10, 2020) ("A number of district courts in the Second Circuit have found an inmate's positive test undermines his case for compassionate release on the basis of his susceptibility to COVID-19 because the main point of releasing an individual is to decrease the person's chance of contracting COVID-19.").  Further, reinfections are "vanishingly rare," https://www.nytimes.com/2020/10/13/health/coronavirus-reinfection.html?searchResultPosition=1, and it appears that those who have had the disease have strong protection, *see* https://www.nytimes.com/2020/11/17/health/coronavirus-immunity.html?searchResultPosition=3.

     I thus do not find the existence of extraordinary and compelling circumstances.

     Even if I did, however, those circumstances would be outweighed by the § 3553(a) factors.  Defendant personally participated in an incredibly dangerous shootout at a crowded party, resulting in the death of another person.  He had previously been involved in two other shootings.  He committed these acts while on parole and in the service of a violent gang.  His prior juvenile and adult sentences for weapons and robbery offenses did nothing to deter him.  Defendant had a difficult childhood and has a difficult road ahead of him.  He is to be commended for keeping a clean record while incarcerated.  But releasing him after serving only

4

two years on a racketeering and murder charge would not begin to sufficiently account for the seriousness of the offense, the harm to the victim or the harm to the community.  It would not be just punishment and would undermine respect for the law.  In short, even if Defendant's medical situation rose to the level envisioned by § 3582(c)(1)(A), the § 3553(a) factors would dictate he remain behind bars,

For the reasons stated above, the motion is denied.[3]

Dated: February 8, 2021
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[3] Defendant seeks, in the event a sentence reduction is denied, an immediate transfer to a hospital and an order directing the Bureau of Prisons ("BOP") to reconsider Defendants' prison designation of USP Coleman.  But the authority to determine a sentenced prisoner's place of incarceration rests solely with BOP.  *See* 18 U.S.C. § 3621 (b).  In any event, I see no need for Defendant to be hospitalized, and while I continue to believe – as I recommended at sentencing – that a federal medical center ("FMC") would be most appropriate designation for Defendant, he apparently disagreed, as evidenced by his request to transfer to MDC only days after being remanded to a medical facility.  BOP's experience with Defendant at MDC apparently convinced it that Defendant does not need to be at an FMC, or perhaps BOP wishes to avoid the costs that would be incurred if Defendant were sent to an FMC and again sought transfer.  That said, if Defendant personally (as opposed to his counsel) requests incarceration at an FMC and represents that he will not seek a transfer to a regular facility, I recommend that BOP accommodate that request, given the myriad medical issues Defendant faces.