UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                                      ORDER

TROY YOUNG,                                         17-CR-364-21 (CS)

                Defendant.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Troy Young's renewed motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release." (ECF No. 647.)

      Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 also permits a sentence reduction for extraordinary and compelling reasons, and additionally requires that the Defendant not be a danger to the safety of any other person or the community. *See* U.S.S.G. § 1B1.13(a), p.s. The Policy Statement, as amended, *see United States v. Feliz*, No. 16-CR-809, 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023),[1] identifies as extraordinary and compelling certain circumstances relating to medical condition, age, family, and prison abuse, as well as any other circumstances (or combination thereof) of similar gravity.

---

[1] I agree with the court in *Feliz*, which found that the November 1, 2023 amendments to Policy Statement 1B1.13 have harmonized the Policy Statement with the First Step Act; that *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), therefore does not apply to the new version of Policy Statement 1B1.13; and that "[a]ccordingly, to grant a motion for compassionate release, a court must now, in addition to finding that the other elements of the compassionate release standard are satisfied, also find that granting such relief is consistent with Policy Statement 1B1.13." 2023 WL 8275897, at *4 (internal quotation marks and citations omitted). But the outcome here would be the same even under *Brooker* and the old version of 1B1.13.

*See* U.S.S.G. § 1B1.13(b)(1)-(5).  It further provides that changes in the law are not be considered for purposes of determining whether extraordinary and compelling circumstances exist (although they may be considered in determining the extent of a reduction if the movant otherwise establishes such circumstances), unless a defendant has served ten years of an unusually long sentence that a change in the law (other than a Guidelines amendment that has not been made retroactive) renders grossly disparate compared to what would be imposed today.  *See* U.S.S.G. § 1B1.13(b)(6), (c).  The policy statement also provides that rehabilitation alone is not an extraordinary and compelling circumstance, but may be considered in combination with other circumstances in determining whether and to what extent a sentence reduction is warranted.  *See id.* § 1B1.13(d); *see also* 28 U.S.C.A. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").  "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." *United States v. Jacques*, No. 20-3276, 2022 WL 894695, at *1 (2d Cir. Mar. 28, 2022) (summary order).

On November 14, 2019, Defendant Young was sentenced principally to 180 months' imprisonment on his convictions for racketeering conspiracy and causing death through the use of a firearm during the commission of murder in aid of racketeering.  (Doc. 483.)  This sentence was substantially below Defendant's Sentencing Guidelines range of 360 months to life.  (Doc. 484 ¶ 83.)  The parties had agreed to recommend 180 months, and the Court went along with the recommendation, in recognition of the fact that during the shootout that resulted in his firearms/murder conviction, Defendant was himself shot, resulting in his being paralyzed from the chest down and suffering other complications, such as an inability to regulate his body temperature.  By the Court's calculation, Defendant has served approximately 77 months.

Defendant cites his paralysis and the substandard care he is receiving at FCI Coleman. He also notes that he was 24 at the time of the offense and lacked the guidance of a father figure growing up. He further notes that under *Lora v. United States*, 599 U.S. 453 (2023), if he were sentenced today the sentence for his firearms conviction would not have to run consecutive to the sentence for his racketeering conviction. He further argues he has been rehabilitated.

At the time of sentencing the Court was aware of Defendant's age and lack of youthful guidance. Those factors do not warrant a different result now. Likewise, it was aware of Defendant's medical condition, and in recognition thereof imposed a drastically reduced sentence. The Court in no way minimizes the suffering and indignities that Defendant's paralysis causes. And if he accurately describes the care he is receiving, it is wholly insufficient. For that reason, the Court remains mystified as to why the Bureau of Prisons ("BOP") has not housed Defendant in a medical facility, and why Defendant did not take the Court up on its offer to make a recommendation for the same.[2] Assuming for purposes of the motion only that Defendant accurately describes his limitations and the care (or lack thereof) he is receiving, he appears to fit under U.S.S.G. § 1B1.13(b)(1)(B)(I) (serious physical condition that substantially diminishes ability to provide self-care in correctional facility and from which recovery is not expected) and

---

[2] In my previous Order, (ECF No. 592), I noted that the authority to determine a sentenced prisoner's place of incarceration rests solely with BOP. *See* 18 U.S.C. § 3621 (b). I further noted that I continued to believe – as I recommended at sentencing – that a federal medical center ("FMC") would be most appropriate designation for Defendant, but that he apparently disagreed, as evidenced by his request to transfer to MDC only days after being remanded to a medical facility. I notedd that BOP's experience with Defendant at MDC apparently convinced it that Defendant does not need to be at an FMC, or perhaps BOP wished to avoid the costs that would be incurred if Defendant were sent to an FMC and again sought transfer. But I stated that if Defendant personally requested incarceration at an FMC and represented that he will not seek a transfer to a regular facility, I would recommend that BOP accommodate that request. I heard nothing further from Defendant and have no reason to believe he ever made the request.

perhaps § 1B1.13(b)(1)(C) (medical condition requiring long-term or specialized care that is not being provided, resulting in risk of serious deterioration in health).  Thus, extraordinary and compelling circumstances exist.[3]

I thus may consider the *Lora* decision in determining the extent of a reduction, pursuant to U.S.S.G. § 1B1.13(c), but it does not influence that decision here, both because I find that the § 3553(a) factors militate against any reduction, as discussed below, and because I would have given Defendant a total of  fifteen years (the agreed-upon sentence) whether or not the firearms sentence had to be consecutive.  I may also consider rehabilitation in considering the extent of a reduction, pursuant to U.S.S.G. § 1B1.13(d), but it also does not influence my decision, because of the § 3553(a) factors and because the certificates Defendant has earned are counterbalanced by the disciplines for having a weapon that he candidly admits.

Even though I assume for purposes of the motion that extraordinary and compelling circumstances exist, they are outweighed by the § 3553(a) factors.  Defendant personally participated in an incredibly dangerous shootout at a crowded party, resulting in the death of another person.  He had previously been involved in two other shootings.  He committed these acts while on parole and in the service of a violent gang.  His prior juvenile and adult sentences for weapons and robbery offenses did nothing to deter him.  Defendant had a difficult childhood and has a difficult road ahead of him.  But releasing him after serving less than seven years on a racketeering and murder charge would not begin to sufficiently account for the seriousness of the

---

[3]Defendant is of course free to pursue administrative, and if necessary judicial, avenues for relief for inhumane conditions of confinement.

offense, the harm to the victim or the harm to the community.  It would not be just punishment and would undermine respect for the law.

In short, while Defendant's medical situation, as he describes it,  rises to the level envisioned by § 1B1.13(b), the § 3553(a) factors dictate that he remain behind bars. Accordingly, the motion is denied.  The Clerk of Court is respectfully directed to send a copy of this Order to Troy Young, No. 79970-054, USP Coleman I, U.S. Penitentiary, P.O. Box 1033 Coleman, FL 33521.

Dated: June 26, 2024
       White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J.